# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

**THIS SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS** (hereinafter "Agreement") is entered into as of the Effective Date, as defined in paragraph 8.2 below, by and between Mark Berkowitz (hereinafter "John Doe" or "Doe"), an individual currently residing in the State of New York, and The Hotchkiss School, a non-stock corporation formed and existing under the laws of the State of Connecticut, having its principal place of business in Lakeville, Connecticut (hereinafter "the School"), (collectively hereinafter as "Parties"), to bring the matters in controversy between the Parties to a full and complete settlement.

### RECITALS

**WHEREAS,** John Doe has asserted certain claims against the School for physical injuries and physical sickness arising out of and relating to one or more incidents alleged in the complaint in the Action, as defined below;

**WHEREAS,** John Doe's claims and allegations are expressed and set out in the complaint in a civil action entitled *John Doe v. The Hotchkiss School*, which is pending in the United States District Court for the District of Connecticut, docket number 3:15-cv-00160 (VAB), (hereinafter "the Action");

**WHEREAS,** four other actions were commenced related to this Action: *Hotchkiss School v. Doe*, No. 3:18-cv-00878-VAB (D. Conn.), *Hotchkiss School v. Doe,* No. 3:18-mc-0037-VAB (D. Conn.), *Hotchkiss School v. Doe*, No. 3:19-cv-00669-VAB (D. Conn.), and *Hotchkiss School v. Doe*, No. 1:18-mc-0081 (S.D.N.Y.) (collectively, "the Related Actions");

**WHEREAS,** the Parties desire to settle fully and finally any and all claims, rights, and disputes between them arising out of or in any way relating to the injuries that John Doe alleges to have suffered as a result of or relating to the incidents or conduct involving the School; and

**NOW THEREFORE,** for and in consideration of the mutual promises, agreements, releases, and other consideration provided for herein, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

### TERMS

1.0 Incorporation of Recitals

1.1 The foregoing recitals are incorporated by reference as if fully set forth herein.

2.0 Consideration

2.1 In consideration of the release recited in paragraph 3.1 below, as well as all other covenants and promises contained herein, the School will cause to be delivered to Lieff Cabraser Heimann & Bernstein, LLP, as counsel for and on behalf of John Doe, payment of the sum of two million nine hundred thousand dollars, ($2,900,000.00), in ready money, within thirty (30) days of the Effective Date (hereinafter "Settlement Payment").

2.2 The Settlement Payment herein constitutes compensatory damages on account of personal physical injuries and physical sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended. In accordance with Section 6045(f) and Treas. Reg. § 1.6045-5(a), (f) (example 2), Hotchkiss shall prepare and file a Form 1099-MISC reporting the full amount of the Settlement Payment in Box 14 ("Gross proceeds paid to an attorney) with the Internal Revenue Service and shall issue a copy to Lieff Cabraser Heimann & Bernstein LLP. Hotchkiss will not issue Doe any other income statement, IRS Form 1099 or other information return, or other tax form in connection with the Settlement Payment.

2.3 Upon the Effective Date, the School will deliver to John Doe a written apology, the text of which is attached hereto as Attachment A.

2.4 Within thirty (30) days after the Settlement Payment shall have been delivered to Lieff Cabraser Heimann & Bernstein, LLP, pursuant to paragraph 2.1, counsel for the Parties shall file stipulations of dismissal of the Action and of the Related Actions.

2.5 By May 29, 2020, the School will create a Sexual Misconduct Advisory Committee (the "Committee"). The Co-Presidents of the School's Board of Trustees and the School's Head of School will name the members of the Committee. The Committee will consist of not less than two Trustees and at least three and not more than five non-Trustee members. Each member of the Committee will be appointed to serve for a term of three years. John Doe will be appointed to be one of the initial members of the Committee. The School will announce the formation of the Committee in the *Hotchkiss Magazine* and on the School's website and will include in these announcements the names of the Committee members, including Doe's legal name.

2.6 As consideration for making the Settlement Payment amount a confidential term, the School agrees to make John Doe's legal name a confidential term. Likewise, as consideration for making his name a confidential term, John Doe agrees to make the Settlement Payment amount a confidential term.

3.0 Release

3.1 In consideration for the Settlement Payment described in paragraph 2.1 above, as well as the covenants and promises contained herein and other good consideration, the receipt of which is hereby acknowledged, John Doe and his heirs, executors, administrators, predecessors, successors, agents, and assigns (hereinafter "the Doe Releasors") do hereby release, acquit and forever discharge The Hotchkiss School and its present and past officers, trustees, agents, employees, attorneys, insurers, representatives, affiliates, successors, and assigns (hereinafter the "School Releasees") from any and all actual and potential claims, complaints, demands, debts, obligations, judgments, suits, actions, causes of actions, damages, grievances, liens, losses, controversies, agreements, promises, obligations, costs, attorneys' fees, rights, fines, penalties, expenses, or assessment of any nature whatsoever, any other liabilities of any sort and description, direct or indirect, at law, in equity, or

otherwise, fixed or contingent, known or unknown, suspected or unsuspected, and whether or not liquidated, including claims based on any type or kind of loss, injury, or liability whatsoever, which, in any way relate to, concern, arise out of, or in any way connect to the facts or allegations contained in the complaint in the Action (herein referenced as "Doe Claims"), and which the Doe Releasors have asserted, could have asserted, or could assert at any time in the future against the School Releasees, or could have asserted under any policies issued by Arrowood[1] to the School. Nothing in this paragraph or in this Agreement shall be interpreted to prevent the Doe Releasors from enforcing the terms and conditions of this Agreement, or from defending against or filing a counterclaim against a School Releasee that has initiated legal action against any Doe Releasor.

3.2 John Doe hereby declares and represents, on his own behalf and on behalf of the Doe Releasors, that he has no outstanding liens, rights of reimbursement, or rights of subrogation affecting his ability to settle the Doe Claims, or, if any such liens or rights exist, that such liens or rights will be the sole responsibility of John Doe, who shall satisfy such liens or rights out of the Settlement Payment recited in paragraph 2.1 above.

4.0 Releasors' Representations

4.1 John Doe hereby represents that, in entering into this Agreement, he has obtained the advice of legal counsel or has voluntarily and knowing waived the right to consult with legal counsel of his choosing. Additionally, John Doe hereby represents that he has entered into this Agreement freely, voluntarily, and without duress or coercion.

4.2 John Doe represents and warrants that he is the sole and lawful owner of all rights, title, and interest in and to all Doe Claims released herein, that he has not sold, assigned, transferred, conveyed, or otherwise disposed of any such Claims, and that he is not aware of any reason why he cannot release any and all Doe Claims as set forth above.

4.3 John Doe hereby acknowledges and affirms that the injuries arising from or relating to the Doe Claims may be permanent and progressive and that recovery therefrom is uncertain and indefinite, and that, in entering into this Agreement, he expressly understands and agrees that he relies upon his own judgment, belief, and knowledge of the nature, extent, and duration of his injuries and damage, and that he has not been influenced to any extent whatsoever in entering into this Agreement by any representations, statements,

[1] Where used in this Agreement, "Insurer" and/or "Arrowood", shall mean: Arrowood Indemnity Company, formerly known as Royal Indemnity Company, as successor by merger to Royal Insurance Company of America; its parent corporation, Arrowpoint Capital Corp.; and each of their present, former or future affiliates, officers, directors, shareholders, members, agents, employees, parents, direct and indirect subsidiaries, divisions, holding companies, merged companies, acquired companies, representatives, attorneys, predecessors in interest, successors in interest, owners, executors, administrators and assigns, if any, in their capacities as such.

suggestions, indications, or other expression regarding any matter by the School Releasees or any of them.

4.4 The Doe Releasors hereby declare and represent that the School Releasees or any of them have not provided any advice to the Doe Releasors regarding tax issues or the treatment of the Settlement Payment for tax purposes, and that nothing in this Agreement constitutes or shall be interpreted to be any such advice of any kind.

5.0 Confidential Terms

5.1 The Parties hereby mutually promise to each other to keep and maintain as strictly confidential the legal name and identity of John Doe (as a term of this Agreement, as a party to this agreement, and as the true identity of plaintiff John Doe in the Action) and not to disclose the same, either directly or indirectly, to any other person, firm, or entity, or to use the same in any way except as may be required by legal process or court order, or such disclosures as may be reasonably required to accountants, attorneys, insurers, reinsurers, insurance monitors, trustees, representatives, or employees of the Parties and their affiliates to the extent reasonably necessary to effect compliance with this Agreement, as well as tax, and/or other regulatory requirements.

5.2 The Parties mutually promise to keep and maintain as strictly confidential the amount of the Settlement Payment, and not to disclose the same, either directly or indirectly, to any other person, firm, or entity, or to use the same in any way except as may be required by legal process or court order, or such disclosures as may be reasonably required to accountants, attorneys, insurers, reinsurers, insurance monitors, representatives, trustees, or employees of the Parties and their affiliates to the extent reasonably necessary to effect compliance with this Agreement, as well as tax, and/or other regulatory requirements, or such disclosure as John Doe, in his sole discretion, may make discretely to his immediate family members.

5.3 John Doe's identity and the amount of the Settlement Payment are each hereinafter referenced as a "Confidential Term." Any person to whom a disclosure of a Confidential Term is authorized to be made under this Agreement shall first be instructed and required to keep such information confidential from further disclosure.

5.4 Notwithstanding the confidentiality of the two Confidential Terms, the Parties agree and acknowledge that nothing else in or concerning this Agreement and the settlement of the Doe Claims is confidential.

5.5 As explained in Section 2.6 above, the keeping confidential of each one of the Confidential Terms serves as consideration of the keeping confidential of the other.

6.0 Nature of Agreement, Controlling Law, Venue Selection

6.1 This Agreement is not an admission of liability whatsoever by the School or by the School Releasees, Arrowood, or any of them as to any matter, including but not limited to the Doe Claims. This Agreement represents the compromise of disputed claims involving contested

issues of law and fact, and the existence of the Agreement, its terms, or the actions to be taken by the School, and/or Arrowood, shall not be construed as an admission or concession of liability, non-liability, responsibility, or wrongdoing by the School Releasees, and/or Arrowood. Further, this Agreement is not an acknowledgment or admission that the School violated or failed to comply with any law, duty, obligation, or contract, and is not an acknowledgement or admission by Arrowood as to liability or any coverage obligations under the policies issued to the School by Arrowood.

6.2 This Agreement constitutes the complete and entire agreement and understanding of the Parties and may not be modified or changed by any prior or subsequent oral agreement, and this Agreement fully supersedes any prior agreements or understandings between the Parties, whether written or oral. It is the intention of the Parties that this paragraph be construed as a merger clause, and that this Agreement be construed as an integrated document. No amendment or variation of the terms of this Agreement shall be valid unless made in writing and signed by the Parties.

6.3 No part of this Agreement, its existence, terms, negotiations, development, implementation, or performance, shall be admissible or used by the Parties in any manner in any civil litigation, or other civil proceeding; provided, however, that such evidence may be offered by either of the Parties in any action or proceeding between the Parties seeking to enforce the terms of this Agreement, or for a defense/counterclaim as described in 3.1, or if and as necessary for any tax proceeding.

6.4 Connecticut law, without regard to its choice of law principles, shall govern the interpretation and enforcement of this Agreement and any claims relating to or arising out of it. Any and all disputes relating to or arising out of this Agreement shall be adjudicated in the United States District Court for the District of Connecticut, which shall be the exclusive jurisdiction and venue to which the Parties agree to submit.

6.5 This Agreement shall be deemed to have been jointly drafted by the Parties and, in construing and interpreting this Agreement, no provision shall be construed and interpreted for or against any of the Parties.

6.6 Should any paragraphs of this Agreement other than paragraphs 2.1, 3.1, 5.1, and 5.2, be declared or be determined by any court or tribunal to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation.

7.0 The School's Representations

7.1 By signing below, the School warrants and represents that (a) the persons signing this Agreement on its behalf have authority to bind the School, and (b) the School's execution of this Agreement does not violate any by-law, covenants, and/or other restrictions placed upon the School by any other obligation(s) of the School.

7.2 The School hereby represents that, in entering into this Agreement, it has obtained the advice of legal counsel or has voluntarily and knowingly waived the right to consult with legal counsel of its choosing. Additionally, the School hereby represents that it has entered into this Agreement freely, voluntarily, and without duress or coercion.

8.0 Execution and Effective Date of Agreement

8.1 This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and all of which shall be deemed one and the same instrument, and PDF, facsimile and other copies of this Agreement shall be as binding and effective as the original.

8.2 The Effective Date of this Agreement shall be the first date on which (a) the Agreement has been fully executed by John Doe, and Robert Gould and Elizabeth Hines, Co-Presidents of the Board of Trustees of the School, and (b) one original of the Agreement has been delivered by email to each of the Parties.

THE NEXT PAGE COMMENCES THE SIGNATURE PAGES

The foregoing is true and correct.

Mark Berkowitz

______________________________

Subscribed and sworn to this
20th day of December, 2019
before me

______________________________

Notary Public
My commission expires

SUSANA G. FERREIRA
Notary Public, State of New York
No. 01FE4946620
Qualified in Nassau County
Commission Expires February 6, 2023

The foregoing is true and correct.

The Hotchkiss School

Elizabeth Hines
Co-President of the Board of Trustees
The Hotchkiss School

The Hotchkiss School

Robert Gould
Co-President of the Board of Trustees
The Hotchkiss School

Subscribed and sworn to this 10th
day of February 2020
before me

Notary Public
My commission expires

SUSAN TYSOWSKI
NOTARY PUBLIC-STATE OF NEW YORK
No. 02TY6079334
Qualified in New York County
My Commission Expires 08-26-2022

Subscribed and sworn to this
day of
before me

Notary Public
My commission expires

The foregoing is true and correct.

The Hotchkiss School

Elizabeth Hines
Co-President of the Board of Trustees
The Hotchkiss School

Subscribed and sworn to this
day of
before me

Notary Public
My commission expires

The Hotchkiss School

Robert Gould
Co-President of the Board of Trustees
The Hotchkiss School

Subscribed and sworn to this 13th
day of February, 2020
before me Charles P. Clapp

Notary Public
My commission expires

Charles P. Clapp
MY COMMISSION EXPIRES
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS

ATTACHMENT A

You have powerfully conveyed how you suffered as a result of your time as a student at Hotchkiss. We are deeply sorry for your suffering. We hope that this resolution is a helpful step in the healing process. And please know that the School is doing everything within our power to ensure that students now and in the future will be cared for and safe.

Robert Gould and Elizabeth Hines
Co-Presidents of the Board of Trustees
The Hotchkiss School